**Ex parte Junior Releford ENGLE.**

**No. 40551.**

Court of Criminal Appeals of Texas.

July 12, 1967.

Rehearing Denied Oct. 11, 1967.

R. Landon Winstead, Jr., Wichita Falls (by appointment), for appellant.

Stanley C. Kirk, Dist. Atty., Wichita Falls, Monroe Clayton, Asst. Atty. Gen., Austin, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

ONION, Judge.

Relator made an application for writ of habeas corpus under the provisions of Article 11.07, Vernon's Ann.C.C.P. to the 89th District Court, Wichita County, Texas. After a hearing, Judge Floyd Jones granted the issuance of the writ and made it returnable to this Court. In connection with such order, Judge Jones also filed his findings of fact and conclusions of law.

The record reflects that relator was indicted in January, 1962, by the Wichita County grand jury for the offense of Burglary with Intent to Commit Theft with four (4) previous convictions for felonies less than capital alleged for the purpose of enhancement under the provisions of Article 63, V.A.P.C. After trial on May 28 and 29, 1962, the relator was convicted of the Burglary alleged and was assessed a life sentence as a habitual criminal. Sentence was pronounced on June 7, 1962, from which no appeal was taken.

In his collateral attack upon this conviction, relator now urges that his court appointed counsel at the trial had not been out of law school for a sufficient period of time to have been assigned such a serious case, and further that he and such attorney were denied the statutory ten (10) day period of preparation after counsel's appointment. See Article 494, V.A.C.C.P., in effect at the time of relator's trial.

We shall discuss these two contentions together. The record reveals that Charles D. Butts, an attorney then practicing in Wichita County was appointed to represent relator. The date of such appointment is not clear from the record, but it does appear

that he was relieved of such assignment on March 19, 1962, as a result of a political campaign in which he was engaged. On this same date, Ray Gene Smith was appointed to represent the relator. The record reflects that at the time Mr. Smith had graduated from law school in January, 1962, had taken the State Bar Examination, and was employed in a law office in the City of Wichita Falls, but had not yet been licensed to practice law by the Supreme Court of Texas. As Mr. Smith recalled at the habeas corpus hearing, he made known to the Court his status at the time of appointment and subsequently secured a postponement of the trial because of it. On May 7, 1962, some three (3) weeks prior to relator's trial, Mr. Smith received his license to practice law and became a member of the State Bar in good standing.

There can be no question but the trial judge then presiding had no authority to appoint an unlicensed individual to represent relator. Article 320a–1, V.A.C.S. Neither is the practice of appointing newly licensed attorneys to defend habitual criminal cases without assistance of experienced counsel to be commended. We conclude, however, that while the appointment was legally ineffective on March 19, 1962, that it became effective on May 7, 1962, the date Mr. Smith received his license to practice. We do not understand that relator seriously urges that he was deprived of the effective assistance of counsel. The record supports a contrary conclusion. Judge Jones in his findings stated that relator's "court appointed counsel vigorously, ably, and diligently represent" him. Without going into great detail, this finding is amply supported by the record attesting to the zeal, interest, and dedication of our younger lawyers to their assignments as counsel for the indigent criminal defendant.

The record does not show at the time of trial that appellant or his counsel moved for a continuance or requested any further time for preparation. Counsel's appointment being effective from May 7, 1962,

there was no necessity to comply with the provisions of Article 494, V.A.C.C.P. (then in effect) before proceeding to trial.

■ Appellant next contends that his written confession was not voluntarily made because he was not given the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Miranda, of course, has application to trials commencing after June 13, 1966, and has no application here. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882. Recognizing this possibility, relator's able counsel contends that while Miranda may not be directly applicable it may be relevant on the issue of voluntariness, citing Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423.

The facts in Clewis and the case at bar are easily distinguishable and many of the factors which caused the United States Supreme Court to conclude Clewis's third confession was not voluntary are not presented here. By his own admission, shortly after arrest, relator gave his only confession following interrogation of "approximately one hour". He was warned, as he admits, that he did not have to make any statement at all and that any statement made could be used against him at his trial. After making the confession, he was taken to the District Attorney's office, and then before a magistrate before being transferred to the County jail.

No question is raised concerning the legality of his arrest prior to the confession. The record does not reflect that relator's faculties were impaired by inadequate sleep and food, sickness or long subjection to police custody with little or no contact with anyone other than police.

Relator claims that he had been drinking prior to his arrest, but denied he was drunk at the time of confession. The officer's testimony showed that he was sober at such time.

The relator does not claim that he was struck by the officer taking confession, but that such officer knocked a package of cigarettes out of his hands and "threatened" him and he observed the officer's clenched fist. No claim of abuse appears to have been made to the person who witnessed the signing of the confession, the Assistant District Attorney, or the magistrate before whom he was taken.

One officer testified it was the policy of Wichita Falls City Police to allow a suspect to call his attorney if he so requested, but that in 1961 they were not advising suspects as to their right of counsel as now required by the 1966 opinion of Miranda v. State of Arizona, supra.

■ We cannot conclude that Clewis, supra, would control as to this relator who was thirty-four years old at the time of the confession, who was able to read and write and had previously been convicted four times of felonies in as many states.

Relator further urges that his conviction must be set aside because his written confession was introduced at the trial and passed on as to voluntariness only by the jury in violation of the dictates of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, which must be applied retroactively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

The record establishes the fact that a separate hearing on the voluntariness of the confession was conducted by the Court in absence of the jury upon defense counsel's objection to the introduction of the statement. After the admission of the confession, the question was presented to the jury, which, by its general verdict, resolved the question against relator.

■ While it does not appear that the trial judge entered a separate order as to his findings as recommended over two years later in Lopez v. State, Tex.Cr.App., 384 S.W.2d 345, and which is now required by Article 38.22, Section 3(b), V.A.C.C.P., Judge Jones concluded from the testimony presented at the habeas corpus hearing that the trial judge made an independent finding

of voluntariness as required by Jackson v. Denno, supra. The record supports such conclusion. See also Sims v. State of Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593.

■ Even if this were not so, we observe that Jackson v. Denno, supra, did not require that the State must necessarily give Jackson a new trial, but held that a hearing in compliance with proper standards to determine if the confession admitted at his trial was in fact voluntary would suffice. At the habeas corpus hearing, the relator and other witnesses fully testified to the circumstances surrounding the taking of the confession, and thereafter Judge Jones concluded as a matter of law and fact that relator's confession was freely and voluntarily made. The requirements of Jackson v. Denno, supra, have been met.

■ Relator further contends the indictment was amended after the trial commenced in violation of Article 533, V.A. C.C.P., in effect at the time of relator's trial. The only evidence in support thereof is relator's own testimony that "the state drew up two prior convictions, they didn't call it indictment or anything * * * they wrote up two prior convictions on a single sheet of paper during recess of court and that is what was used to convict me of being a habitual criminal."

It appears from the record that prior to the reading of the indictment to the jury, the State waived and abandoned the fifth paragraph of the indictment alleging a fourth prior conviction for enhancement. Although it appears that three prior convictions were proven, the District Attorney, in drafting the charge for the Court, submitted only two of such convictions to the jury.

The record does not support relator's contention.

Lastly, relator complains that he was denied the right of appeal, the appointment of counsel on appeal and a record for appeal.

■ We note, at the outset, that this is not a death penalty from which counsel would be required to appeal. Ex parte Caldwell, Tex.Cr.App., 383 S.W.2d 587.

Relator testified he discussed the matter of appeal with his court appointed attorney, but that such counsel refused to appeal the case, and he "felt that was the end of it." He could not recall whether at the time of sentencing the trial court said anything to him about his right of appeal.

The Court appointed counsel, Ray Gene Smith, testified he discussed the matter of appeal with relator when the verdict was received, subsequently in jail, and in open court just prior to the sentencing; that he explained to relator what a motion for new trial was and what an appeal was; that relator clearly indicated that he did not wish his counsel to do anything; that he (counsel) stood ready to appeal the conviction if that had been the wish of relator.

It is clear that relator did not give notice of appeal as required by Article 827, V.A. C.C.P., in effect at the time of the sentence nor does the record show that relator manifested in any way to the trial court or any responsible official or representative of the State his desire to appeal, or that they knowing of his desire failed to aid him. See Pate v. Holman, 5 Cir., 341 F.2d 764, modified on re-hearing, 343 F.2d 546; Edge v. Wainwright, 5 Cir., 347 F.2d 190; United States ex rel. Bjornsen v. La Vallee, 2 Cir., 364 F.2d 489; Bashlor v. Wainwright, Fla., 189 So.2d 800. In Ex parte Wilson, Tex. Cr.App., 392 S.W.2d 134, this Court pointed out that we did not construe Pate v. Holman, supra, as holding that a court appointed attorney is such a responsible State official or representative there mentioned. No State action was shown which deprived relator of his Fourteenth Amendment rights.

■ We recognize that the appointment of counsel on appeal is not dependent upon a request therefor by an indigent defendant whose desire to appeal is manifest.

Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33. In the case at bar, there can be little question but what the trial court knew of relator's indigency, but relator's claim of deprivation must necessarily rest upon the assertion that the State had an affirmative obligation to advise him of his right to appeal and of the procedure to enforce that right. While the evidence admitted at the habeas corpus hearing does not reflect whether such advice was afforded to relator by the trial court it undoubtedly would have been commendable.[1] We do not, however, construe Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, or Swenson v. Bosler, supra, cited by relator, as requiring that such advice be furnished where no desire to appeal has been manifested, or as requiring the trial court to initiate an inquiry or extend an invitation to appeal.

We further observe, while not introduced into evidence, the trial court permitted to be attached to the record a memorandum opinion dated April 27, 1965, of the Honorable Ben Connally, United States District Court, Southern District of Texas, in which court relator by writ of habeas corpus sought to raise then this very same contention. There, the Court, after hearing the relator and other witnesses, wrote in part, as follows:

"In the instant case, the trial court took affirmative action by advising the petitioner of his rights to appeal at the time of sentencing. He cannot stand mute after being advised of his rights to appeal, and thereafter be heard to complain that the State denied him this right. Pate v. Holman, supra. '(H)abeas corpus has

traditionally been regarded as governed by equitable principles. * * * Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.' Fay v. Noia, 372 U.S. 391, 438 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963). The Court is of the view, and finds, that the entire question of taking an appeal is an afterthought on the part of petitioner, fabricated long after his arrival at the penitentiary as a habeas corpus, aid, and is completely false."

 We conclude that relator was not deprived of his right to appeal or to the appointment of appellate counsel. In view of our disposition of this portion of relator's last contention, we need not discuss his entitlement to an appellate record.

The relief prayed for is denied.

---

1. Texas has no procedural rule requiring the trial court upon imposition of sentence to advise a defendant of his right of appeal and the procedure therefor, including the right of an indigent to appeal in forma pauperis. See Rule 32 (a) (2), Federal Rules of Criminal Procedure. In light, however, of recent United States Supreme Court opinions, i. e., Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33; Anders v. State of California, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396; Enstminger v. State of Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501, trial judges would be well advised to notify all defendants of their right to appeal and the procedure therefor, and have the record reflect such action, preferably in the sentence itself.