MOLITOR V. STATE 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-89-247-CR





JAMES ARTHUR MOLITOR,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT



NO. 89-308-K, HONORABLE WILLIAM S. LOTT, JUDGE



 



 A jury convicted appellant, James Arthur Molitor, of murder, Tex. Penal Code
Ann. § 19.02 (1989), and assessed his punishment at life imprisonment. Tex. Penal Code Ann.
§ 12.32 (Supp. 1992). Appellant advances ten points of error. He contends there is no evidence
that he intentionally or knowingly killed the deceased as alleged. In other points, appellant claims
that the trial court erred in refusing to order disclosure of the content of his oral statements made
to a police officer after disclosure had been ordered at a pretrial hearing, erred in allowing
irrelevant and prejudicial matters into evidence during the interrogation of the deceased's mother,
and erred in refusing Jackson v. Denno (1) hearings on two occasions. Additional points center on
the court's charge. Appellant argues that the trial court erred in refusing charges to the jury on
theories of self defense, defense of property and accident, and on the lesser-included offense of
criminally negligent homicide. We will affirm the judgment of conviction.



Statement of Facts


 We shall commence our discussion with appellant's tenth point of error claiming
there was no evidence that he intentionally or knowingly killed Kenneth Dale Wylie, the deceased. 
The facts are essential to this point and will place the other points of error in proper perspective.

 On Sunday afternoon, May 28, 1989, the appellant heard rocks hitting the side of
his house. He looked out a window and saw two five-year old boys. The children were Matthew
Egloff, who lived next door, and Christopher Wylie, who also lived in the neighborhood. 
Christopher apparently was not known to appellant. Appellant went outside, and when
Christopher started to throw another rock despite his admonishment to stop, appellant grabbed the
child's arm and apparently slapped Christopher, who started crying. Both boys ran next door to
the Egloff home.

 Soon thereafter, Mike Egloff and Kenneth Dale Wylie, the two boys' fathers, went
to appellant's home. Wylie's wife, carrying her infant daughter, and Christopher followed them. 
Wylie went to the front door and began knocking. Egloff was about six feet behind Wylie and
to the left. Wylie's wife and the two children were some distance behind the two men.

 According to the testimony of Mike Egloff and Wylie's wife, a conversation ensued
between Wylie and the appellant after he opened the door. Wylie asked why appellant had struck
his son. When appellant related the rock-throwing incident, Wylie advised appellant to come to
him, not his son, if the son misbehaved. The witnesses stated that there was then a gun shot, and
appellant slammed the door. Neither witness was in a position to see the gun when it fired; they
only heard the shot. Both testified that Wylie neither entered appellant's house nor hit appellant
in any fashion.

 When Deputy Sheriff Mike Locke responded to a call, he found Wylie lying on the
ground between two residences. Several people were standing around. When he asked who was
involved in the shooting, appellant, standing by his garage door, answered, "I shot him." 
Appellant later showed Mike Locke the gun inside his house. 

 The cause of Wylie's death was shown to be a gunshot wound of the abdomen
resulting in massive internal bleeding. The medical examiner estimated that the gun had been
fired from a distance of six inches to two feet away from Wylie's body. The doctor testified the
bullet angle was a "30 degree angle on the horizontal" . . . "parallel to the ground," that it was
not coming up or going down. The weapon shown to have fired the fatal shot, a double action
revolver, has a trigger that when pulled, both cocks and releases the hammer to fire the revolver.

 Appellant's version of the facts differs somewhat from the State's version. After
the rock-throwing incident with the children, appellant testified that he heard a loud banging at
his front door that startled him. When he looked out the peephole in the door appellant saw two
individuals whom he did not recognize. He was not well acquainted with his neighbors. The loud
pounding continued. Frightened, appellant went to a cabinet near the door and obtained the
loaded revolver "in case he needed to scare someone off, or [he] could threaten them to get
away." Appellant placed his finger in the trigger guard of the gun and concealed the weapon
behind his back with his arm straight down, "hoping it wouldn't be necessary to brandish it." He
then opened the door.

 According to appellant, when he opened the door he was confronted by a man who
was red in the face. The man was Wylie, whom appellant had never met. Appellant testified that
Wylie "said something to me, turned -- and he turned back and said something else and hit me in
the side of the head." The next thing appellant remembered was getting up off of the floor and
smelling gun powder. He testified, "I swear to God I do not remember doing it [pulling the
trigger]." Appellant never testified that the blow to his head caused him to discharge the revolver,
or that in falling the gun went off accidently. Appellant could not remember what occurred. He
stated that he did not intend to kill Wylie. 


Sufficiency of Evidence


 The standard for reviewing the sufficiency of the evidence is whether, viewing the
evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found the essential elements of the offense charged beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim.
App. 1989), cert. denied, 105 S.Ct. 2575 (1990); Dickey v. State, 693 S.W.2d 386, 387 (Tex.
Crim. App. 1984). The standard for review is the same in both direct and circumstantial evidence
cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990); Chambers v. State, 711
S.W.2d 240, 244-45 (Tex. Crim. App. 1986); cf. Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991) (abolishing the reasonable hypothesis construct in circumstantial evidence cases with
the decision to be applied prospectively).

 Appellant urges that there is no evidence to support the culpable mental states of
intentionally or knowingly as alleged in the indictment. Proof of a culpable mental state generally
relies on circumstantial evidence. Gardner v. State, 736 S.W.2d 179, 182 (Tex. App. 1987),
aff'd, 780 S.W.2d 259 (Tex. Crim. App. 1989). Intent may be inferred from the acts, words and
conduct of the accused. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). 
Knowledge can also be inferred from the conduct of and remarks by the accused and from the
circumstances surrounding the acts engaged in by the accused. See Dillon v. State, 574 S.W.2d
92, 94-95 (Tex. Crim. App. 1978); Escanbrack v. State, 646 S.W.2d 480, 481 (Tex. App. 1983,
no pet.).

 There is no direct evidence as to appellant's state of mind at the precise time of the
shooting; it is clear, however, that he fired the shot that killed the deceased. The intent to commit
murder may be inferred from the defendant's use of a deadly weapon per se. Flanagan v. State,
675 S.W.2d 734, 744 (Tex. Crim. App. 1984); Foster v. State, 639 S.W.2d 691, 695 (Tex. Crim.
App. 1982); Fentis v. State, 528 S.W.2d 590, 592 (Tex. Crim. App. 1975). The defendant's use
of a deadly weapon per se is only a circumstance indicating guilt from which a jury may or may
not infer an intent to kill. It is neither conclusive nor burden shifting. Moreno v. State, 755
S.W.2d 866, 868-69 n.3 (Tex. Crim. App. 1988). In an appellate review, evidence of "the use
of a deadly weapon per se constitutes more than a 'mere modicum' of evidence of an intent to
kill," when viewed in the light most favorable to the jury's verdict. Id.

 Appellant correctly asserts that this inference of intent to kill can be rebutted. 
Foster, 639 S.W.2d at 695. In Foster, the inference was rebutted where all the evidence pointed
to an accidental shooting, and the court held the evidence was insufficient to prove that the
defendant intentionally or knowingly caused the death of the deceased. In the instant case, it is
undisputed that the appellant shot the deceased with a double action revolver which was shown
to be a firearm. A firearm is a deadly weapon per se. Gomez v. State, 685 S.W.2d 333, 336
(Tex. Crim. App. 1985).

 Unlike Foster, all the evidence in the instant case does not point to an accidental
shooting. The appellant acknowledged that he retrieved a loaded gun before he opened the door. 
He asserted that the deceased struck him and that he fell. Appellant did not remember pulling the
trigger. He did not testify directly that the shooting was accidental. The shot was fired parallel
to the ground, and not at an angle "coming up." Two eyewitnesses testified that the deceased
never hit the appellant. While the members of the jury were free to believe appellant's testimony
that he did not intend to kill the deceased, they were also free to reject his version of the facts and
reasonably infer that appellant intentionally or knowingly killed the deceased. Jurors are the triers
of the facts, the judges of the credibility of the witnesses, and of the weight to be given their
testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (1979). The jury is entitled to accept or reject
all or any part of the testimony by the witnesses for the State and the accused. Beardsley v. State,
738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Reconciliation of evidentiary conflicts is solely
a function of the trier of fact. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that any rational trier of fact could have found beyond a reasonable doubt all the essential elements
of the offense charged, including the requisite intent. Point of error number ten is overruled.




Failure to Disclose Statements


 In his first point of error appellant contends that the trial court erred in refusing to
order the State to disclose to him "the content of a statement made by appellant to an investigating
officer although same had previously been ordered." Appellant made certain oral statements to
a peace officer at the scene of the alleged offense. He later refused to give a written statement. 
The oral remarks were included in an offense report prepared by the officer, a work product of
the State. At a pretrial hearing before a visiting judge, appellant asked that the report be disclosed
to him. The State opposed this discovery request on the basis that the report was not discoverable
under the statute. See Tex. Code Crim. Proc. Ann. art. 39.14 (1979). Further, the State pointed
out that it did not intend to use the oral statements in its case-in-chief but only if the appellant
testified, and then only for impeachment purposes. The prosecutor noted that appellant had
available another officer's testimony from a "probable cause" hearing reflecting that the appellant
had orally admitted at the scene that he had shot the deceased and that the gun in question was his. 
The visiting judge denied the discovery request, but stated that he would order disclosure at trial
in the event that the appellant testified and before "any examination is made by the State." We
do not find any written orders on discovery in the record. 

 After the State rested its case at the trial on the merits, and before the appellant
testified, the appellant recalled Deputy Sheriff Wayne Locke, brother of Mike Locke. Appellant's
counsel elicited from Locke that appellant had admitted at the scene that the gun was his and that
he had shot the deceased. At this point the district attorney approached the bench and warned
counsel that his interrogation was going to permit the balance of appellant's conversation with the
officers at the scene to become admissible. See Tex. R. Crim. Evid. Ann. 107 (Pamph. 1992)
(rule of optional completeness). The colloquy turned to the discovery ruling, when appellant
again requested the offense report. The "regular" judge of the district court who was presiding
at the trial inquired about the discovery ruling. After being informed, the court denied appellant's
request. 

 When the State began its cross-examination of the appellant, there was no further
request for the offense report. When the prosecutor inquired of appellant's conversation with
Captain Richard Elliott, whose offense report was involved, appellant's only objection was that
the conversation was not admissible until a Jackson v. Denno hearing was held. There was no
claim that any discovery order was being violated. The complaint on appeal does not comport
with the objection made at trial. Nothing is presented for review. See Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990). The first point of error is overruled.



Failure to hold Jackson v. Denno Hearings


 In points of error two and five, appellant contends that the trial court reversibly
erred in refusing Jackson v. Denno hearings on oral statements he made at the scene of the alleged
offense to Captain Elliott in the presence of Deputy Wayne Locke. See Madden v. State, 691
S.W.2d 688, 690-91 (Tex. Crim. App. 1985). Appellant urges that even if the statements were
being used only for impeachment, he was entitled to a hearing on the issue of voluntariness. See
Tex. Code Crim. Proc. Ann. art. 38.22, § 5 & § 6 (Vernon 1979). He calls our attention to two
separate parts of the appellate record where he asked for a Jackson v. Denno hearing. What
appellant fails to tell us is that he was accorded a Jackson v. Denno hearing when Captain Elliott
testified for the State in rebuttal. In a separate hearing in the absence of the jury, Elliott related
that he gave the appellant the Miranda (2) warnings, that appellant initialed each warning and said
that he understood the warnings. Thereafter, when asked if he would like to tell the officer what
had happened, the appellant replied, "Yes." He told Elliott his story, signed a consent-to-search
form, and permitted the officers to examine the left side of his head. It was only later that
appellant declined to give a written statement. The evidence as to the voluntariness of the oral
statements was not controverted. Appellant made no claim at the hearing, nor does he do so now,
that his oral statements were involuntary because of an overbearing of will, coercion or duress. 
See Mincey v. Arizona, 437 U.S. 385 (1978). Thus, the record does not indicate that appellant's
statements were involuntary under "traditional standards for evaluating voluntariness and
trustworthiness." Oregon v. Hass, 420 U.S. 714 (1975); see also Huffman v. State, 746 S.W.2d
212, 220-21 (Tex. Crim. App. 1988).

 Having ignored the Jackson v. Denno hearing that was held, appellant does not
brief the points of error to show that he was harmed by the failure of the court to accord a
voluntariness hearing earlier in the trial on the merits. See Tex. R. App. P. Ann. 74(f) (Pamph.
1992).

 Under any circumstances, it does not appear that reversible error is presented by
points of error two and five. Even if Jackson v. Denno was applicable at the times urged, a new
trial is not necessary. A remand for a voluntariness hearing is all that would be called for, but
even that is rendered unnecessary by the fact of the subsequent voluntariness hearing at the trial
on the merits. Cf. Davis v. State, 505 S.W.2d 800, 802 (Tex. Crim. App. 1974); King v. State,
502 S.W.2d 795, 798 (Tex. Crim. App. 1973); Coursey v. State, 457 S.W.2d 565, 569 (Tex.
Crim. App. 1970); Ex parte Engle, 418 S.W.2d 671, 675 (Tex. Crim. App. 1967). Points of
error two and five are overruled.



A Claim of Irrelevant and Prejudicial Matters


 In his third point of error, appellant contends that the trial court erred in allowing
introduction into evidence of "irrelevant and prejudicial matters." It appears that appellant
complains of the admission into evidence of a duly authenticated birth certificate of the deceased
and two family photographs.

 The indictment alleged, inter alia, that the appellant "intentionally and knowingly
caused the death of an individual, Kenneth Dale Wylie, by shooting him with a deadly weapon,
namely, a firearm. . . ." (emphasis added). See Tex. Penal Code Ann. § 19.02(a)(1) (1989). The
burden of proof beyond a reasonable doubt was on the State. See Tex. Penal Code Ann. § 2.01
(1974); Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 1992). The State called the
deceased's mother, Mary Sue Anderson, as a witness. She identified the birth certificate, a recent
photograph of the deceased and his son, and a photograph of the deceased, his wife and two
children. When the exhibits were offered into evidence, appellant simply objected that they were
"irrelevant and prejudicial." In order to preserve error on appeal, an objection to evidence must
be specific and timely made. Tex. R. Crim. Evid. Ann. 301(a)(1) (Pamph. 1992); Tex. R. App.
Proc. Ann. 52(a) (Pamph. 1992); Little v. State, 758 S.W.2d 551, 563 (Tex. Crim. App.), cert.
denied, 488 U.S. 934 (1988). Normally, a general objection is insufficient to preserve error. 
Lewis v. State, 664 S.W.2d 345, 349 (Tex. Crim. App. 1984). The objection made at trial was
too broad, general and global to preserve error. Maynard v. State, 685 S.W.2d 60, 64 (Tex.
Crim. App. 1985); see also Barnard v. State, 730 S.W.2d 703, 716 (Tex. Crim. App. 1987),
cert. denied, 485 U.S. 929 (1988). Appellant made no Rule 403 objection. Tex. R. Crim. Evid.
Ann. 403 (Pamph. 1992). In fact, he claimed only in part that the evidence was irrelevant, and
did not reasonably apprise the trial court of the ground on which his "prejudice" objection was
based. As to the birth certificate, there was no objection based on failure to comply with Rule
902. Tex. R. Crim. Evid. Ann. 902 (Pamph. 1992). The third point of error is overruled.



Bolstering



 Appellant's fourth point of error states that the trial court "erred in permitting the
State to admit a prejudicial, bolstering statement of appellant as rebuttal evidence." It appears that
appellant has confused bolstering with proper impeachment by rebuttal testimony. "Bolstering"
occurs when one item of evidence is improperly used by a party to add credence or weight to
some earlier unimpeached piece of evidence offered by the same party. Pless v. State, 576
S.W.2d 83, 84 (Tex. Crim. App. 1978); Frison v. State, 473 S.W.2d 479, 481 (Tex. Crim. App.
1971); see also Anderson v. State, 717 S.W.2d 622, 630 (Tex. Crim. App. 1986). The testimony
complained of by appellant does not fall within this rule. The two peace officers, Wayne Locke
and Richard Elliott, were called to rebut appellant's statement that he did not slap the five-year
old Christopher Wylie prior to the shooting as well as his equivocal statements about the matter. 
That the officers repeated some of the facts testified to by appellant is insignificant since they were
a necessary predicate to and part of their rebuttal testimony.

 On cross-examination, appellant stated that he had grabbed Christopher's arm to
knock the rock out of his hand. When asked if he had slapped the child, he responded, "I may
have. . . ." When pressed by the prosecutor as to his memory of the occasion, appellant stated
"I did not slap him. I may have hit him." Subsequently, when questioned about whether he told
Captain Elliott that he had slapped the boy, appellant responded: "I may have said that. I was
very upset at that point."

 In rebuttal, the State called officers Wayne Locke and Richard Elliott. Over the
objections of bolstering, not impeachment, Locke testified that in his presence appellant admitted
to Elliott that he had slapped the child, and Elliott testified that in the same conversation appellant
remembered the details of what he had done to the little boy. At one point in the trial appellant
denied he had slapped the child. When asked if he told Elliott the contrary, appellant's answers
were not unequivocal admissions. Thus the State's impeachment was proper. Tex. R. Crim.
Evid. Ann. 612 (Pamph. 1992); see also Boyd v. State, 774 S.W.2d 48, 50 (Tex. App. 1989, pet.
ref'd). The fourth point is overruled.



Instruction on Use of Deadly Force in Self-defense 



 In point of error six, appellant contends that the trial court erred in refusing to
charge the jury on the issue of self-defense. Appellant concedes that the issue is whether he was
entitled to a jury instruction on the right to use deadly force in self-defense.

 A defendant is entitled to an affirmative defensive instruction on every issue raised
by the evidence, regardless of whether it is strong, feeble, unimpeached, or contradicted, and even
if the trial court is of the opinion the testimony is not entitled to belief. Booth v. State, 679
S.W.2d 498, 500 (Tex. Crim. App. 1984). If the defensive theory is raised, and the trial court
is timely and properly requested to instruct the jury on that theory, the trial court must instruct
the jury on the raised defensive theory. The jury is the trier of fact, and no one else has the
responsibility to decide whether to accept or reject a properly rasied defensive theory. Thompson
v. State, 521 S.W.2d 621, 624 (Tex. Crim. App. 1974).

 Concluding that the defensive theory was properly "requested," we must decide
whether the evidence raised the issue so as to require the submission of a charge on deadly force
in defense of a person. Self defense being a justification, the burden of producing the evidence
(going forward with the evidence) is upon the defense. Once that burden has been satisfied the
burden of persuasion beyond a reasonable doubt shifts to the State. Whiting v. State, 797 S.W.2d
45, 47 (Tex. Crim. App. 1990); Luck v. State, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979),
cert. denied, 100 S.Ct. 2171 (1980).

 It has been said that a perusal of the 1974 Penal Code assures one that a defense
does not merely negate an element of an offense, but rather requires the accused to admit the
commission of the offense and then to justify or excuse his actions so as to absolve him of
criminal responsibility for engaging in conduct which otherwise would constitute a crime. 
Sanders v. State, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986). Willis, however, determined that
Sanders "spoke too generally in deciding that all defenses were in the nature of confession and
avoidance." Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990). We need not
determine if appellant admitted the commission of the offense charged, cf. Martinez v. State, 775
S.W.2d 645, 647 (Tex. Crim. App. 1989), because the disposition of the point of error may be
properly based on other grounds.

 Appellant used deadly force in shooting the deceased with a revolver. Section 9.32
of the Texas Penal Code (Deadly Force in Defense of Person) provides that the use of deadly
force is justified in self-defense only when three conditions are present: (1) the defendant would
have been justified in using force under § 9.31 (3); (2) a reasonable person in the defendant's
situation would not have retreated; and (3) the use of deadly force was reasonably believed to be
immediately necessary to protect the defendant against another's use or attempted use of unlawful
deadly force, or to prevent the imminent commission of specified violent crimes. Tex. Penal
Code Ann. § 9.32 (Supp. 1992).

 In the absence of evidence of use or attempted use of deadly force by the deceased,
the statutory defense permitted by § 9.32 is not available, and a defendant is not entitled to a jury
instruction. Werner v. State, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); Ogas v. State, 655
S.W.2d 322, 324-25 (Tex. App. 1983, no pet.); Jones v. State, 644 S.W.2d 530, 532 (Tex. App.
1982, no pet.); Bray v. State, 634 S.W.2d 370, 372-73 (Tex. App. 1982, no pet.) 

 In Ogas, it was held that a blow to the face with an open or closed hand does not
constitute the use or attempted use of a deadly force justifying the response of deadly force in self-defense. 655 S.W.2d at 324; see also Howlatt v. State, 700 S.W.2d 747, 751 (Tex. App. 1985),
aff'd, 777 S.W.2d 44 (Tex. Crim. App. 1989) (hair pulling did not justify deadly response).

 Appellant did not testify that Wylie, the deceased, or anyone with him was armed
or had a weapon in their possession. Appellant did not, and plainly could not, testify that he
reasonably believed it necessary to shoot the deceased in order to defend himself against the
deceased's use or attempted use of deadly force. Appellant claimed only a blow to his head 
struck by deceased deceased's hand. Appellant claimed he could not remember pulling the
trigger, and could not remember what happened until he got up from the floor. We conclude that
the trial court did not err in refusing to give a self-defense charge on the use of deadly force. 
Matthews v. State, 725 S.W.2d 491, 494 (Tex. App. 1987), remanded on other grounds, 761
S.W.2d 11 (Tex. Crim. App. 1988). We need not consider whether a reasonable person in
appellant's circumstance would not have retreated. (4) Appellant's sixth point of error is overruled.



Instruction on Defense of Property


 In appellant's eighth point of error, he argues that the trial court erred in refusing
to instruct the jury on the right to use deadly force to defend his property. Evidence from any
source can raise a defensive issue, which must be included in the court's charge upon proper
objection or request, regardless of the weight of the evidence. Hayes v. State, 728 S.W.2d 804,
808 (Tex. Crim. App. 1987). The record indicates that the appellant used deadly force, to wit: 
a firearm. Deadly force is defined as a "force that is intended or known by the actor to cause or
in the manner of its use is capable of causing, death or serious bodily injury." Tex. Penal Code
Ann. § 1.07(11) (1974). Since deadly force was used by the appellant, we must look to Tex.
Penal Code Ann. §§ 9.41 and 9.42 (1974).

 Texas Penal Code Ann. § 9.41 provides in pertinent part:



(a) a person in lawful possession of land or tangible movable property is justified
in using force against another when and to the degree the actor reasonably believes
the force is immediately necessary to prevent or terminate the others' trespass on
the land or unlawful interference with the property.


 Section 9.42 of the Penal Code provides:


A person is justified in using deadly force against another to protect land or other
tangible, movable property:


(1) if he would be justified in using force against the
other under § 9.41 of this Code; and


(2) when and to the degree he reasonably believes
the deadly force is necessary:


 (A) to prevent the others' imminent
commission of arson, burglary, robbery, aggravated
robbery, theft during the nighttime, or criminal
mischief during the nighttime; or


 (B) to prevent the other who is fleeing
immediately after committing burglary, robbery,
aggravated robbery, or theft during the nighttime
from escaping with the property; and


(3) he reasonably believes that:


 (A) the land or property cannot be protected
or recovered by any other means; or


 (B) the use of force other than deadly force to
protect or recover the land or property would expose
the actor or another to a substantial risk of death or
serious bodily injury.



 There was no evidence in the record of imminent arson, burglary, robbery, theft,
criminal mischief or the commission of any of these crimes, nor was there evidence that the
deceased committed any such offense and was fleeing immediately thereafter. Even if appellant
had a fear of potential damage to his property, there was no evidence of an imminent crime or
damage to the property. We need not reach the question of whether the appellant may have
reasonably believed that his property could not be protected or recovered by any other means
under § 9.42(3), supra, because there is no evidence that a listed crime was committed or
imminent under § 9.42(2), supra. Phoenix v. State, 640 S.W.2d 306, 307 (Tex. Crim. App.
1982). Even if that question is reached, there was no evidence suggesting a reasonable belief on
the part of appellant that deadly force was necessary to protect his home or other property. 
Accordingly, the evidence was insufficient to require a defense instruction of deadly force to
protect property. See Id.; Warren v. State, 764 S.W.2d 906, 910 (Tex. App. 1989, pet. ref'd);
MacDonald v. State, 761 S.W.2d 56, 61 (Tex. App. 1988, pet. ref'd); Jackson v. State, 753
S.W.2d 706, 710 (Tex. App. 1988, pet. ref'd); Rogers v. State, 653 S.W.2d 122, 125 (Tex. App.
1983, pet. ref'd). Appellant's eighth point of error is overruled.



Requested Charge on "Accident"


 The seventh point of error advanced by appellant contends that the trial court "erred
in refusing to charge the jury on the defensive theory of accident." Appellant calls our attention
to that part of the record which reflects:



Mr. Shell: [Defense Counsel]: And also you're denying the charge on
accident, is that correct?


The Court: Yes, sir.



 "Accident" is no longer a defense under the 1974 Penal Code and the trial court
did not err when it refused to charge on that issue as such. See George v. State, 681 S.W.2d 43,
45 (Tex. Crim. App. 1984); Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982). 
An instruction on "voluntariness" now serves the same function as the former instruction on
"accident." Joiner v. State, 727 S.W.2d 534, 535 (Tex. Crim. App. 1987); Williams, 630
S.W.2d at 644; Graf v. State, 807 S.W.2d 762, 767 (Tex. App. 1990, pet. ref'd); see Tex. Penal
Code Ann. § 6.01(a) (Supp. 1992) ("A person commits an offense only if he voluntarily engages
in conduct, including an act, an omission, or possession.") A jury should now be instructed to
acquit if the evidence raises a reasonable doubt that the defendant voluntarily engaged in the
conduct, upon proper and timely objection or request. See George, 681 S.W.2d at 45.

 In the body of argument under this point of error, appellant contends he dictated
into the record a special requested charge on "accident." The same is not set forth in his brief. 
See Tex. R. App. P. 74(f) (Pamph. 1992). An examination of this requested instruction indicates
that appellant sought a charge on "voluntariness." It would have instructed the jury to acquit if
it found from the evidence or had a reasonable doubt that the shooting was a result of an
accidental discharge of a gun while Wylie and the appellant were struggling or scuffling for the
possession of the gun or just "struggling" and that the shooting was not the voluntary act or
conduct of the Defendant.

 There was no evidentiary support for the fact that Wylie and appellant were
struggling for the possession of the revolver or were otherwise struggling, causing the accidental
discharge of the gun. Appellant did not himself claim accidental discharge, but testified in effect
that he did not know how the gun discharged. Where the evidence does not raise the issue of
involuntary conduct, the trial court is not required to include the instruction in its charge to the
jury. George, 681 S.W.2d at 47; Williams, 630 S.W.2d at 644; Ross v. State, 763 S.W.2d 897,
900 (Tex. App. 1988, pet. ref'd); Gaona v. State, 733 S.W.2d 611, 617 (Tex. App. 1987, pet.
ref'd); Pimental v. State, 710 S.W.2d 764, 773 (Tex. App. 1986, no pet.).

 In Ross, the court wrote:



 The Court [in George] acknowledged the fact that a person could commit an
offense only if he voluntarily engaged in conduct. See George, 681 S.W.2d at 45;
see also Joiner, 727 S.W.2d at 535; Gaona, 733 S.W.2d at 615. However, the
Court went on to define just what "voluntarily engaging in conduct" meant. See
George, 681 S.W.2d at 45. Under the Court's definition, "conduct" could include
one or more separate acts, so for "voluntary conduct" to occur, the Court held that
a person only had to engage in a single voluntary act and its required mental state. 
See Id. Therefore, conduct is not rendered involuntary simply because it may also
include an involuntary act or because the accused did not intend the result of his
conduct. See Joiner, 727 S.W.2d at 536-37; George, 681 S.W.2d at 45; Gaona,
733 S.W.2d at 616.


 In the final analysis, a trial court is not required to charge on involuntary conduct
if the defendant engaged in a single voluntary act and its required mental state --
even though an involuntary act may also constitute part of the overall conduct. See
Joiner, 727 S.W.2d at 536-37; George, 681 S.W.2d at 47; Gaona, 733 S.W.2d at
617. That is just the situation before us here.

Ross, 763 S.W.2d at 900.

 Up to the time the revolver discharged, appellant engaged in voluntary conduct with
the required culpable mental state of intentionally or knowingly. The mere fact that he did not
intend for the gun to discharge did not render the conduct involuntary so as to require an
involuntary conduct charge. Ross, 763 S.W.2d at 901. Moreover, evidence generally raises a
defense only if the defendant admits the act charged and the defense will absolve him from
criminal responsibility for engaging in the conduct. Accordingly, for this additional reason the
trial court did not err in refusing requested instructions on "accident" or "voluntariness" because
it was not raised by the evidence. Graf, 807 S.W.2d at 768. Appellant's seventh point of error
is overruled.



Charge on Criminally Negligent Homicide


 In his ninth point of error, appellant argues that the trial court erred by refusing
to charge the jury on the offense of criminally negligent homicide, a lesser included offense. At
the outset, we are confronted with the State's claim that appellant did not preserve this complaint
for appellate review. If appellant's "request" for an instruction on criminally negligent homicide
consisted only of the portion set out in the State's brief, the State's position would be correct. 
There were two other "requests" for the instruction desired, the latter one being based on "the
evidence." While these "requests" are no models to be emulated, we conclude they were
sufficient, under the record in this case, to call the trial court's attention to the claimed omission
in the proposed charge. Tex. Code Crim. Proc. Ann. art. 36.15 (Supp. 1992); Stone v. State, 703
S.W.2d 652, 655 (Tex. Crim. App. 1986); Stiles v. State, 520 S.W.2d 894, 896-97 (Tex. Crim.
App. 1975).

 There is a two-pronged test for determining whether a jury must be charged on a
lesser included offense. First, the lesser included offense must be included within the proof
necessary to establish the offense charged. Second, there must be some evidence in the record
that if the defendant is guilty, he is guilty of only the lesser offense. Kinnamon v. State, 791
S.W.2d 84, 96 (Tex. Crim. App. 1990); Creel v. State, 754 S.W.2d 205, 210 (Tex. Crim. App.
1988); Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State, 622
S.W.2d 442, 447 (Tex. Crim. App. 1981). In reviewing the facts to make the determination, all
of the evidence presented by the State and the defendant must be considered. Dowden v. State,
758 S.W.2d 264, 269 (Tex. Crim. App. 1988); Lugo v. State, 667 S.W.2d 144, 147 (Tex. Crim.
App. 1984). Entitlement to a jury instruction on a lesser included offense must be made on a
case-by-case basis according to the particular facts. Livingston v. State, 739 S.W.2d 311, 336
(Tex. Crim. App. 1987), cert. denied, 487 U.S. 1210 (1988); Broussard v. State, 642 S.W.2d
171, 173 (Tex. Crim. App. 1982).

 Since criminally negligent homicide is a lesser included offense of murder, the first
prong of the so-called Royster test is satisfied. See Thomas v. State, 699 S.W.2d 845, 847 (Tex.
Crim. App. 1985); Tex. Code Crim. Proc. Ann. art. 37.09 (1981); see also Tex. Penal Code
Ann. §§ 19.02(a)(1) and 19.07(a) (1989). This alone is not enough. We must turn to the second
prong of the test and determine whether there is some evidence in the record that appellant, if
guilty, is guilty only of criminally negligent homicide. In doing so, we must consider all the
evidence produced by either party. Dowden, 758 S.W.2d at 269. Whenever evidence from any
source raises an issue that a lesser included offense may have been committed and a jury charge
on the issue is properly requested, the issue must be submitted to the jury. Moore v. State, 574
S.W.2d 122, 124 (Tex. Crim. App. 1978). A defendant's own testimony is sufficient to raise the
issue of a lesser included offense. Hunter v. State, 647 S.W.2d 657, 658 (Tex. Crim. App.
1983). Further, "[t]he credibility of evidence and whether it is controverted or conflicts with
other evidence in the case may not be considered . . . ." Id. This is true whether the evidence
be strong, weak, unimpeached, or contradicted. Thompson v. State, 521 S.W.2d 621, 624 (Tex.
Crim. App. 1974). In a jury trial where the issue is raised it is the duty of the jury, not the trial
court, "to determine whether the evidence is credible and supports the . . . lesser included
offense." Moore, 574 S.W.2d at 124; see also Kinnamon, 791 S.W.2d at 96.

 "A person commits an offense if he causes the death of an individual by criminal
negligence." Tex. Penal Code Ann. § 19.07(a) (1989). Section 6.03(d) of the Texas Penal Code
defines criminally negligent conduct:


 A person acts with criminal negligence, or is criminally negligent, with respect 
to circumstances surrounding his conduct or the result of his conduct when he
ought to be aware of a substantial and unjustifiable risk that the circumstances
exist or the result will occur. The risk must be of such a nature and degree that
the failure to perceive it constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint.



Tex. Penal Code Ann. § 6.03(d) (1974) (emphasis added).

 A person commits involuntary manslaughter if he recklessly causes the death of an
individual. Tex. Penal Code Ann. §§ 19.05(a)(1), 6.03(c) (1974) (defining "recklessly"). As
noted above, a person commits criminally negligent homicide if he causes the death of an
individual by criminal negligence. The difference between the two culpable mental states required
to establish the offenses of involuntary manslaughter and criminally negligent homicide,
respectively, lies in whether or not the accused himself perceives the risk of harm which his
conduct creates. Moore, 574 S.W.2d at 123. Thus, the essence of criminal negligence, and the
factor that distinguishes it from involuntary manslaughter, is the failure of the accused to perceive
the risk created by his conduct, which he should have perceived. Mendieta v. State, 706 S.W.2d
651, 652 (Tex. Crim. App. 1986); Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). 
Before a charge on criminally negligent homicide is required, the record must contain evidence
showing an unawareness of the risk. Mendieta, 706 S.W.2d at 653.

 In Thomas v. State, 699 S.W.2d 845 (Tex. Crim. App. 1985), the evidence was
insufficient to entitle the defense to a charge on the lesser included offense of criminally negligent
homicide. The court pointed out that evidence raising the issue of whether a defendant was aware
of the risk must be presented before a charge is warranted. 


 Evidence that a defendant knows a gun is loaded, that he is familiar with guns
and their potential for injury, and that he points a gun at another, indicates a
person who is aware of a risk created by that conduct and disregards the risk. Cf.
Simpkins v. State, 590 S.W.2d 129 (Tex. Cr. App. 1979). That he does not
anticipate a third person bumping him, causing the weapon to discharge, is a
consideration that must be examined with the other evidence to determine
awareness of the risk involved in pointing a loaded gun at another. However, in
such a case, the awareness of the risk is not necessarily altered. It is not
necessarily inattentive risk creation. Lewis, supra. Rather, the risk is realized and
actual harm results. Just because part of the conduct may be "involuntary" does
not relieve a defendant of responsibility and culpability for the entire action. 
[footnote omitted]. Similarly, a defendant may be aware of a risk and disregard
it. The resulting harm may not have been intended, but the defendant is
nonetheless responsible to some degree because he disregarded a risk.



Thomas, 699 S.W.2d at 850 (emphasis in original).

 In Thomas, the Court of Criminal Appeals criticized past cases decided by that
court which had held that the evidence raised criminally negligent homicide, but neglected to
detail the evidence showing that the defendant ought to have, but did not, perceive a substantial
and unjustifiable risk in his conduct. The Thomas court pointed out that a charge on criminally
negligent homicide is not required in every case where (1) someone points a loaded gun at another
or (2) there is an allegation of accidental discharge of the gun. Thomas, 699 S.W.2d at 850. The
attendant circumstances from which the defendant's mental state can be inferred must be
collectively examined in light of the definition of criminal negligent conduct. Thomas, 699
S.W.2d at 850; see Tex. Penal Code Ann. § 6.03(d) (1974).

 Pertinent to a determination of whether the evidence shows an awareness of the risk
that the result will occur are attendant circumstances such as a defendant's familiarity with the gun
and its potential for injury; a defendant's conduct in handling the gun; how the weapon could be
fired; and how the weapon was actually fired. Still v. State, 709 S.W.2d 655, 661 (Tex. Crim.
App. 1986); see also Miranda v. State, 739 S.W.2d 473, 475 (Tex. App. 1987, no pet.).

 In the instant case, appellant testified that he owned a rifle and a .410 caliber
shotgun when he was a youth. He had also fired the revolver in question when he was "a kid."
His father had given him the revolver in 1982, but he had not fired it since that time. Appellant
admitted that he had cleaned, oiled and loaded the revolver and had placed it in the cabinet near
the front door. The evidence shows appellant's familiarity with firearms, including the revolver
in question, and their potential for injury. Appellant testified he took the loaded revolver from
the cabinet during the pounding at the door in case he needed to "scare someone off" or "threaten
them to get away." He related that he hoped that he would not have to "brandish it." Appellant
placed the loaded revolver behind his back with his finger in the trigger guard, and then opened
the front door. Appellant stated that the deceased said something, stepped inside his house, and
struck him in the head; that the next thing he remembered was getting up off the floor and
smelling gunpowder; that he did not remember pulling the trigger and did not know how the gun
was fired; and that he did not intentionally intend to kill the deceased. Appellant did not directly
testify the blow to his head caused him to fire the gun, or that the revolver accidently discharged. 
He simply could not recall how the revolver discharged.

 In determining whether this evidence could give rise to a reasonable inference that
appellant was unaware of the risk of death that his conduct created, we observe that just because
part of appellant's conduct may have been involuntary does not necessarily relieve him of
responsibility and culpability for the entire conduct. See Thomas, 699 S.W.2d at 850. (5) Any
involuntary conduct is a consideration, however, that must be examined with the other attendant
circumstances to determine awareness of the risk of the resulting death. Id.

 Here, the appellant voluntarily obtained a revolver which he knew was loaded. He
was familiar with guns and their potential for injury. Appellant voluntarily placed the gun behind
his back and placed his finger inside the trigger guard. He then opened the door. Appellant
claimed he did not pull the revolver from behind his back, but was struck by the deceased. 
Appellant did not recall pointing the revolver at the deceased or pulling the trigger. In
considering how the weapon could have been fired and was actually fired, Still, 709 S.W.2d at
661, we note that it was a double action revolver. When the trigger is pulled, it both cocks and
releases the hammer to fire it. The bullet was fired at close range from six inches to two feet,
leaving light gunpowder striping and tattooing over a five inch area on the body. The six-foot,
five-inch tall Wylie was wounded in the abdomen over the left rib margin twenty-seven inches
from the top of the head and four inches to the left of his midline. The record reflects the
following examination of the medical examiner:



Q: What degree angle from the midline was the entrance wound?


A: The entrance wound came from the left toward the right but toward his
back at a 30 degree angle and on the horizontal.


Q: So, it wasn't coming up?


A: No, it wasn't.


Q: It was going down? It was parallel to the ground?


A: That's correct.



The medical examiner testified that the angle of the trajectory indicated that the weapon was fired
"straight on." The physical evidence suggests the loaded revolver must have been pointed at the
deceased. When all the attendant circumstances are considered, they indicate a person who was
aware of the risk created by the conduct and who disregarded the risk. See Thomas, 699 S.W.2d
at 850. Testimony regarding his lack of intent to shoot or kill, and the claim of accident or
blackout do not call for a different conclusion.

 We conclude that the evidence does not show a defendant who failed to perceive
a substantial and unjustifiable risk in his conduct of which he should have been aware. Nor does
the evidence raise the issue that if guilty, appellant was guilty only of the lesser included offense
of criminally negligent homicide. The trial court did not err in refusing the requested charge. 
See Mendieta, 706 S.W.2d at 651; Thomas, 699 S.W.2d at 845; see also Still, 709 S.W.2d at 658;
Kuykendall v. State, 609 S.W.2d 791 (Tex. Crim. App. 1980); Simpkins v. State, 590 S.W.2d 129
(Tex. Crim. App. 1979); and Jackson v. State, 548 S.W.2d 685 (Tex. Crim. App. 1977). 
Appellant's ninth point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

[Before Justices Jones, B. A. Smith and Onion*]

Affirmed

Filed: March 18, 1992

[Publish]




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (1988).
1. [1] Jackson v. Denno, 378 U.S. 368 (1964); see also Tex. Code Crim. Proc. 38.22 § 6
(1979).
2. [2] Miranda v. Arizona, 384 U.S. 436 (1966).
3. [3] In pertinent part § 9.31 (Self defense) provides:


(a) Except as provided in subsection (b) of this section a person is
justified in using force against another when and to the degree he
reasonably believes force is immediately necessary to protect himself
against the other's use or attempted use of unlawful force. Tex. Penal
Code Ann. § 9.31(a) (1974).
4. [4] A defendant's duty to retreat arises at the time the use of deadly force becomes
necessary. Fielder v. State, 683 S.W.2d 565, 592 (Tex. App. 1985), rev'd on other grounds,
756 S.W.2d 309 (Tex. Crim. App. 1988). The duty to retreat is applicable to the defendant
even in his own home. Valentine v. State, 587 S.W.2d 399, 402 (Tex. Crim. App. 1979).
5. [5] Cf. George v. State, 681 S.W.2d 43 (Tex. Crim. App. 1984), wherein the court held
that where a defendant's handling of a gun is voluntary, the fact that his thumb may have
slipped off of the hammer "involuntarily" does not render the action involuntary.